Vence agt. Vence.

---

## SUPREME COURT.

### EUPHEMIA M. VENCE agt. AUGUST VENCE.

The common law maxim, that the domicil of the wife follows that of the husband, has no application in actions for a divorce, where a separation has actually taken place; and where the very proceedings in the action are to show that the relation of husband and wife should be dissolved, or so far modified as to establish separate interests; and especially of bed and board, and of domicil and home.

In such a case, the law will recognize the wife as having a separate existence and separate rights. Therefore, in an action for a limited divorce, *a mensa et thoro*, for cruel and inhuman treatment, the plaintiff may properly lay the venue in the county where she actually resides at the commencement of the action, although the domicil of the defendant (where both parties formerly resided, and where the defendant actually resides,) is in another county.

*Broome Special Term, February,* 1858.

THIS is an action for a limited divorce *a mensa et thoro*, for

cruel and inhuman treatment. The plaintiff was married to the defendant at the residence of her father, Richard Morris, at Butternuts in the county of Otsego, on the 19th of September, 1856. On the 24th of the same month, the parties sailed for England, and remained in England and on the continent of Europe, until in May, 1857, when the parties returned to this country, and went immediately to Butternuts in Otsego county, and resided there until in October last, when they went to the city of New-York, and went to housekeeping. The parties remained in New-York until the 7th of January last, when the plaintiff was compelled to flee from the house, from the cruel treatment of the defendant, and seek refuge and protection from her father, at his residence in Butternuts aforesaid, where she resided at the commencement of this action, with her two children by a former marriage, and where she still resides, and where she swears she intends permanently to remain. She owns property in the county of Otsego, and is a freeholder in that county, being the owner in fee of the family mansion and farm of the late General Morris, her grandfather.

The defendant claims that the defendant's domicil is in New-York, and that by the common law, the domicil of the wife follows that of the husband, and that the plaintiff, therefore, had no right to lay the venue in this action in the county of Otsego, as both parties are residents of the city of New-York. The defendant demanded that the place of trial be changed to the city and county of New-York, which the plaintiff refused, and defendant now moves, as well upon this ground as for the convenience of witnesses, that the place of trial be changed to the city and county of New-York.

GEORGE C. GENET and THOMAS D. WRIGHT, *for defendant.*
HENRY R. MYGATT, *for plaintiff.*

MASON, Justice. The 125th section of the Code requires actions to be tried in the county in which one of the parties shall reside at the time of the commencement of the action. If the common law maxim that the domicil of the wife follows

that of the husband, prevails in these adversary proceedings for a decree of separation, then the place of trial in this action must be changed to the city and county of New-York.

I am satisfied, however, after a careful examination of the matter, and the best reflection which I have been capable of bestowing upon the subject, that the common law maxim that the domicil of the wife follows that of the husband, has no application in actions for a divorce, where separation has actually taken place, and where the very proceedings in the action are to show that the relation of husband and wife should be dissolved, or so far modified as to establish separate interests, and especially of bed and board, and of domicil and home.

In such a case, the law will recognize the wife as having a separate existence and separate rights. (14 *Pick. R.* 185.) As the husband can change his domicil at will, the wife would have very little protection under the law, where the husband had forfeited his marital rights, if we admit the doctrine that her domicil follows his. He might, when his own misconduct gave the wife a right to be rescued from his power on account of his cruelty and misconduct towards her, deprive her of the means of enforcing her rights, and in fact of the rights themselves, and of all protection under the law, by fleeing to a foreign country, if the maxim be admitted to prevail in such a case, that the domicil of the wife follows that of the husband. (14 *Pick. R.* 186 ; 5 *Pick. R.* 461 ; 10 *Mass. R.* 260.) This maxim, that the domicil of the wife follows that of the husband, only applies when the ordinary relation of husband and wife exists in union and harmony. It is founded upon the theoretic identity of person and of interest, as established by law, and the presumption that from the nature of that relation the home of the one is that of the other; but, when in fact, that relation of the identity of home has been severed by the misconduct of the husband, and no longer as matter of fact exists, but the relations of the parties, on the contrary, have become hostile, then it seems there is no longer unity of domicil, and the maxim of unity of domicil, no longer prevails. (14 *Pick.*

R. 185, 186.) It has been repeatedly held, that the residence of the husband is not the residence of the wife, for the purpose of giving jurisdiction over her person in proceedings for divorce. (14 Mass. R. 231; 2 Cowen & Hill's Notes, 879; Richardson agt. Richardson, 2 Mass. R. 153; id. 167; 3 Mass. R. 184.)

In the case of Irby agt. Wilson, (1 Devereux & B. Equity R. 568, 582,) the court decided that in divorce cases, the domicil of the wife will be held to be where she actually resides.

In the case of Harding agt. Alden, (9 Greenleaf's R. 147,) the court regard the husband and wife as having different domicils, in view of the law regulating divorces. There is nothing in the Massachusetts cases, referred to by the counsel for the defendant, which conflicts with the views above expressed, unless the reasoning in Greene agt. Greene, (11 Pick. R. 409,) should be regarded as conflicting; and if it is to be so considered, it is more than answered by the same court in Harteau agt. Harteau, (14 Pick. R. 181.) Our statute allows the plaintiff to fix the place of trial in the county where either of the parties reside. This means their actual residence, and as the plaintiff was a resident of Otsego county at the time of the commencement of this action, the venue was properly laid there.

The motion is fully defended upon the merits and must be denied.